# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**

**VICTORIA MCGEE-HARRIS,**

    **Defendant.**                               **Case No. 11-CR-30022-DRH**

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

The Court conducted and evidentiary sentencing hearing on February 17, 2012, during which testimony was heard from Ms. Jean Phillip from Met Life relative to a variety of issues including actual loss, number of victims and restitution as a direct cause of the defendant's criminal acts in this case. The Court found Ms. Phillip's testimony to be credible and persuasive and accorded it great weight on the issues mentioned above in making its determination on these sentencing issues in the face of defendant's objections to the advice rendered by the Sentencing

Commission in the form of various enhancements to the offense level for a determination of the guideline range to contemplate for possible sentence alternative for defendant's incarceration.

The Court noted during the hearing that it found that a married couple constituted two victims, which was in support generally of the probation officer's finding. The Court did make a finding in open court of 56 victims if and only if one were to assume alternatively that married couples did not constitute two victims, even though the Court specifically stated that its finding was to the contrary. The 7th Circuit has not yet ruled on this issue at present. This Court made certain findings on the general issues, but the Court did not make a finding of what the actual number of victims was which constituted the total number of victims in this case with that finding. The Court finds there are 75 victims in this case. The defendant insisted in argument that the only issue was whether the probation officer was right and no other finding could be made by the Court. Of course, the defendant misses the mark. It is well settled that the Court may hear evidence and make whatever findings the evidence supports if the Court is able to make the finding on reliable evidence based on a preponderance of the evidence, which the Court has done here. *See United States v. Watts*, 519 U.S. 148, 156, 117 S.Ct. 633, 136 L.Ed 2d 554 (1997)("facts relevant to sentencing [should] be proved by a preponderance of the evidence [ ] and ... application of the preponderance standard at sentencing generally satisfies due process."); *United States v. Schuster,* 948 F.2d 313, 315 (7th Cir. 1991) (stating that due process does not require that the facts on which a sentence

is based be correct beyond a reasonable doubt but only by a preponderance of the evidence); *United States v. Lister,* 432 F.3d 754, 762 (7th Cir. 2005) ("due process right to be sentenced on the basis of accurate information … is generally satisfied when the facts in question are found by a preponderance of the evidence using information that has a sufficient indicia of reliability to support its probable accuracy."). Defense counsel pressed the Court to be specific and as the Court began to read the names of the victims in open court, stopped the Court from reading each of the names and refused the Court's offer to continue to read each name.

The Court needed additional time to consider two exhibits and Ms. Phillip's testimony on the issue of restitution owed by the defendant to Met Life. The two exhibits are government's 1 and 2. The government argued that it believed that it had met its burden of proof, which is a preponderance of the evidence, for the Court to find restitution as demonstrated in government's exhibit 2 of $7,059,951.51. However, the government argued that in wanting to take the more conservative approach, benefitting the defendant and eliminating all questions and preventing any possible error, it requested the Court find restitution based on the net unaccounted client fund figure found in government exhibit 1 which is $5,987,829.69.

The Court's obligation is to impose a requirement of restitution pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA"),18 U.S.C. § 3663A(c)(1)(A)(ii). *United States v. Pawlinski*, 374 F.3d 536, 539 (7th Cir. 2004). A wire fraud conviction requires the government to prove that "the defendant participated in a scheme to defraud," *United States v. Howard,* 619 F.3d 723, 727

(7th Cir.2010). The statute makes restitution available to victims of fraud to the extent that those victims would have been entitled to recover in a civil suit against the criminal. *United States v. Martin,* 195 F.3d 961, 968 (7th Cir.1999).

The Court, therefore, finds that to use a number because it is safe and to simply prevent any question of error is not in keeping with the word and spirit of the act. The definition of a victim is:

> For the purposes of this section, the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, *any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.*

18 U.S.C. § 3663A(a)(2) (emphasis added); *United States v. Rand*, 403 F.3d 489, 494 (7th Cir. 2005). Recently the Seventh Circuit held:

> "Accordingly, '[a]s long as the [sentencing] court can adequately demarcate the scheme, it can order restitution for any victim harmed by the defendant's conduct during the course of that scheme.' *Smith*, 218 F.3d at 784. Other circuits have arrived at the same conclusion. *E.g., United States v. Kones,* 77 F.3d 66, 70 (3d Cir.1996) ("[W]here a defendant is convicted of defrauding person X and a fraudulent scheme is an element of that conviction, the sentencing court has power to order restitution for the loss to defrauded person Y directly caused by the defendant's criminal conduct, even where the defendant is not convicted of defrauding Y"); *Booth,* 309 F.3d at 576 (same)."

*United States v. Locke*, 643 F.3d 235, 247 (7th Cir. 2011).

Clearly, Met Life is a victim. However, Ms. Phillip testified that government's exhibit 2 demonstrated that Met Life, in the course of trying to make its customers whole, made payments to some customers to compensate them for certain investments that were ill advised or inappropriate and not in keeping with the tenets

of proper investment advice. The Court does not interpret this evidence as corroboration of fraud committed upon the clients and therefore victimization of Met Life in a vicarious manner. However, for this column in government's exhibit 2, where the indication is delay (Messmer but not Skidis who ultimately did not qualify as a victim) and tax reimbursement (Sampson), the Court does attribute these payments as victimization as there was ample testimony regarding the defendant would take money from a client and wait for an unreasonable period of time before depositing the money in either the appropriate account or the inappropriate account. Furthermore, there was ample evidence that in order to cover up her own criminal schemes involving what should have been "1035 transfers" between funds, but in actuality were withdrawals by defendant to her personal accounts, thereby creating a taxable event for her client, the defendant prepared tax returns for her clients, if they would allow, not all did. If they did not, or she did not offer, the taxable event would not be reported. Therefore, the tax reimbursement and accountant's fee in the subject column is found by the Court to be a part of the victimization. The return of contribution minus distributions associated therewith, likewise are found to be part of the victimization. The result of these findings by the Court is that of the $310,216.18 for the particular column being singled out by the Court (labeled MISREP PAYMENT in government's exhibit 2), all but $55,029.65 must be removed, or $255,186.53. Deducting that misrep payment from the restitution amount of $7,059,951.51 leaves a final restitution due from defendant to Met Life in the amount of $6,804,764.98. This amount is in addition to the $8,000.00 which the Court

found specifically owed to Shirley Trucks in open court during the hearing.

The defendant shall pay any financial penalty that is imposed by the judgment which shall be entered in this case and that remains unpaid at the commencement of the term of supervised release. Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be paid in equal monthly installments of $1,500.00 or ten percent of her net monthly income, whichever is greater, to commence 30 days after release from imprisonment to a term of supervision.

**IT IS SO ORDERED**.

Signed this 21st day of February, 2012.

David R. Herndon
2012.02.21
15:53:51 -06'00'

**Chief Judge**
**United States District Court**